JANVIER, Judge.
This is a controversy between a brother and a sister, Albert E. Briede, Jr., and Mrs. Juanita Briede Curry Theard, over the question of who is the legal third director óf a corporation of which about 98.4% of the stock is owned by them.
The litigation was commenced by a petition filed by Mrs. Theard, in which she sought an injunction to prevent the issuance of certain checks by the corporation and in which she sought also, by quo warranto, to have it determined that Albert E. Briede, III, claiming to be a third director of the corporation, had not been legally elected to that position.
Mrs. Theard, the relatrix was formerly the wife of William J. Curry, Sr., and is now the wife of Rene A. Theard. She alleges that she is the owner of 663½ shares of stock of the corporation Albert E. Briede & Son, Inc., and that her brother, Albert E. Briede, Jr., is the owner of 668½ shares;' that their two holdings constitute 98.4% of the capital stock of the corporation. She alleges also that she and her brother acquired their stock by inheritance from their parents, except that her brother acquired five additional shares by purchase. She further alleges that when she. and her brother acquired their stock there were certain “conflicting” issues between them and that, accordingly, they agreed to an ■amendment of the charter of the corporation under which, among other things, it was provided in the amendment of Article V that “all the corporate powers of said Corporation shall ¡be vested in and exercised by the Board of Directors, to be composed of three members, none of whom need-be stockholders of this Corporation * * which directors “shall be selected annually on the first Tuesday of October of' each year bn a vote of stockholders representing not less than two-thirds of the outstanding capital stock of the Corporation. *' *
She then alleges that at the annual meeting of stockholders, which was held on October 3rd, 1950, although she and her brother were both elected unanimously by the votes of all of the shares represented at the meeting “there Was a deadlock or impasse with respect to the election of a third member to function with Petitioner and defendant, Albert E. Briede, Jr.; such deadlock- involving defendant, Albert E. Briede, III, and Malcolm M. Dienes, neither of whom received the necessary two- ■ *570 thirds vote required uncler the provisions of the Charter of the Corporation, as amended”
She alleges that notwithstanding the failure of “Albert E. Briede, III, to obtain the necessary two-thirds vote required for election, he, with the aid and assistance of defendant, Albert E. Briede, Jr., his father and the President of the said Corporation, has unlawfully and improperly assumed the position of a member of the Board of Directors of the said Corporation in direct violation of the provisions of the Charter, as amended, * *
There are many other allegations on which was based the prayer for injunction to prevent the issuance of certain checks but the application for injunction has been withdrawn and all that remains is the question of whether Albert E. Briede, III, was legally elected a director at the meeting of stockholders, which admittedly was held on October 3rd, 1950.
The corporation itself was not made a defendant and Albert E. Briede, Jr., and Albert E. Briede, III, filed exceptions to the jurisdiction of the court ratione personae and exceptions of no cause of action and no right of action, and they also filed an answer in which they denied the allegations concerning the necessity for an injunction, and they averred that Albert E. Briede, III, had been legally elected a director at the meeting held on October 3rd, 1950.
By stipulation of counsel the exception to the jurisdiction of the court ratione personae was withdrawn. As a result of the agreement to withdraw the exception to the jurisdiction and.to also withdraw the application for injunction, the matter came up for trial on the sole remaining issue of whether Albert E. Briede, III, had been legally elected.
There is in the record a stipulation as to just yvhat occurred at the all important meeting, and we now set forth that stipulation in full: . , •
“It is stipulated and agreed between counsel that there was a meeting of Albert E. Briede & Son, Incorporated, duly -called, and convened ,as, the annual - stockholders’meeting on October 3, 1950, at-the registered office of the corporation, at which there were present three stockholders Of the corporation, they being Mr. Albert E. Briede, Jr., Mrs. W. J. Curry-Theard, through her proxy, Mr. Leopold Stahl, and Mr. B. Singer; that nominations weré called for and nominations made by Mrs. Curry-Theard through her proxy, the nominations being Malcolm M. Dienes, Mrs. W. J. Curry-Theard .and Albert E. Briede, Jr. Nominations were made by Mr. Sriede, Junior, as follows: Albert E. Briede, Jr., Mrs. W. J. Curry-Theard and Albert E. Briede, III; that the nominations were duly seconded; that a vote was called,' with thfe following result: For Mr. Albert E. Briede, Jr., unanimous, there being present at the meeting 1333 shares. For Mrs. W. J. Curry-Theard, unanimous, the same number of shares, 1333. For Albert E. Briede, III, there were voted 668½ shares by Mr. Albert E. Briede, Jr., and 1 share by Mr. B. Singer, total 669½ shares. For Malcolm M. Dienes, there were voted by Mrs. Theard, through her proxy, 663½ shares. The President announced the election to be valid and Mr. Stahl announced that he contested the declaration of the election.”
The entire controversy hinges upon an interpretation of the provisions of Article V of the amended charter concerning the vote required for the election of directors. We repeat that provision under which it is required that directors “ * * * shall be selected * * * on a vote of the stockholders representing not less than two-thirds of the outstanding capital stock of the -Corporation.”
On behalf of the relatrix, Mrs. Theard, it is argued that this provision means that a director must receive a favorable vote of two-thirds of all the outstanding stock and that since Briede, III, received a vote of only 669½ shares, which is not two-thirds of all the stock, there being 1354 shares outstanding, he was not legally elected.
It is the contention of Briede, III, that the quoted, charter amendment does not mean that each director, in' order to be elected, must receive a two-thirds vote of all the outstanding stock,- but merely -that *571 in order for an election to be held two-thirds of the outstanding stock must be represented at the meeting and that if there is such representation there may be' a legal election of directors and that a majority vote of the shares represented at the meeting shall be sufficient for election.
The judge of the district court was of the opinion that the interpretation placed upon this clause by Mrs. Theard is the correct one, and that accordingly since Briede, III, did not receive a two-thirds vote of outstanding stock he had not been legally ■elected. The district judge based this ■opinion largely upon the fact that in the .amendments to the charter which were .agreed upon, reference to a vote of two-thirds of the stock appeared in three different places. In the first place it was provided that the capital stock might be Increased on a vote of the stockholder representing not less than two-thirds of the outstanding capital . stock. The second provision referred to is that before any sale or transfer of stock could be made, the stock should be offered to the corporation at its book value and that the corporation should purchase the stock and could not reissue it except “on a vote of the stockholders representing not less than' two7 thirds of the outstanding capital stock.” The third provision referred to by the district judge is that with which we are concerned, that directors must be elected annually at a meeting “on a vote of the stockholders representing not less' than two-thirds of the capital stock of the Corporation.”
The record shows that very shortly after the relatrix and her brother, Albert E. Briede, Jr., acquired by inheritance their interest in the corporation, there were disagreements between them and that the re-latrix attempted to pursuade her brother to sell to her one-half of the additional five shares which he ha.d acquiréd by direct purchase from other stockholders and that he repeatedly refused to sell to .her one-half or two and one-half shares of these five shares.
The record shows also that, in addition to the stock owned by the relatrix and by her brother, there were twenty-two shares outstanding which were held by other stockholders. Consequently it was apparent that, ⅛ the event of a dispute between the relatrix and her brother, these other shareholders, though few in number, could, by deciding with either the one or the other, control an election or in fact control almost all action by the corporation.
' It is the contention of- the relatrix that in this situation her brother finally agreed that although he would not sell her one-half of his additional five shares, he would consent to an amendment of the charter which, among other things,' would prevent the election of a director except upon a two-thirds vote ’of all the shareholders.
Briede denies that he consented to this and his counsel argues that the reason which prompted Briede to consent to the amendment was his realization that in fairness to his sister he should create a situation which • might enable her, by not allowing her stock to be represented át a meeting, to prevent, a legal meeting from being held.
Counsel fbfi the relatrix and for Briede, Jr., argue vehemently the various reasons which may have prompted the adoption of the amendment. Counsel for the relatrix contends that there is no necessity for resorting to anything but the Wording of the amendment itself to show the purpose for which it was adopted and to show its meaning; that it is clear and unambiguous, but that if there is any ambiguity the reasons which prompted its adoption should be taken into consideration in order to arrive at a proper interpretation.
Counsel for the respondents, on the other hand, also vehemently contends that the meaning is perfectly clear but that if there is any ambiguity the reasons which prompted its adoption show plainly that Briede', Jr., did not intend that a two-thirds vote of all outstanding stock should be required for the election of directors.
We regret that, we find ourselves completely unable to agree with our brother below in his interpretation of the disputed words of the amendment. It seems to us that there can be only one meaning attached *572 to them and that is that in order that there be a quorum for an election of directors two-thirds of all outstanding stock must be represented at the meeting, but we see nothing in that amendment which must be interpreted as meaning that in order for a director to be elected there must be a favorable vote of two-thirds of all of the stock outstanding.
We attach some little significance - to the word “on” which appears in the quoted amendment. We repeat that the amendment provides that the election shall be on a vote of the stockholders representing not less than two-thirds of the outstanding capital stock. In other words, we take this to mean that if two-thirds of the capital stock is represented at the meeting, a legal election may be held. The provision does not require that a two-thirds vote must be received “by” the nominee.
Counsel for the relatrix strenuously contends that there is no reason whatever to interpret the requirement as in effect meaning that there must be a quorum of two-thirds before any election can be held. He says that there was no quorum requirement expressly set forth in the charter before the amendment and that therefore a quorum consisted of a majority of the outstanding stock, and since there is no quorum requirement in the amendment, a quorum still consists of a majority of the outstanding stock.
All we have to say in answer to this is that we do not so interpret the amendment. It seems to us clear that since- there was no quorum required in the charter, as originally enacted, it would not have been possible for Mrs. Theard, by remaining away .from a meeting, to have prevented the election of directors objectionable to hers and that all that Briede, Jr., agreed to do was to give her that power and to say to her, by the amendment, that if she desired to prevent an election she should not have her stock represented and no election could be held, but that if she desired to have her stock represented at a meeting with the necessary result that there would be present two-thirds of the outstanding stock, a legal election might be held and any director receiving a majority vote would be elected.
We have discussed the matter as though' it were entirely a controversy between Mrs. Theard and her brother because, in fact, that is what it is. Strictly speaking, however, the controversy has, as we have said, been reduced to a simple quo warranto proceeding in which Albert E. Briede, Jr., is not concerned and which is limited in its effect, solely against Albert E. Briede, III. Consequently, when the petition, insofar as it was an application for an injunction, was withdrawn, there remained no cause of action at all against Albert E. Briede, Jr. The controversy, as we have said, was then limited to the question of whether Albert E. Briede, III, was legally elected.
Accordingly, it is our view that the exception of no cause of action filed by Albert E. Briede, Jr. should have been sustained and the suit dismissed as to him on the maintenance of that exception. It is also our view that inasmuch as Albert E. Briede, III, was legally elected at the election- held on October 3rd, 1950, the quo warranto proceeding against him should have been dismissed. .
In view of our conclusions on those questions it is not proper that we consider or discuss the question of the correctness vel non of the. finding of the' district judge that the board of directors of the corporation consisted of Albert E. Briede, Jr., Mrs. Juanita Briede Curry Theard and Malcolm .M. Dienes. The only question involved was and is whether Albert E. Briede, III, was elected a director and we hold that he was.
For the reasons assigned the judgment appealed from is annulled, avoided and reversed; the exception of no cause of action filed by Albert E. Briede, Jr., is maintained, and the suit as against him is dismissed, and there is further judgment'in favor of Albert E. Briede, III, dismissing' the suit of relatrix; all at the cost of relatrix.
Reversed.